# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:

HOWARD MOSS, Individually and on Behalf
of All Others Similarly Situated,

        COMPLAINT—CLASS ACTION

Plaintiff,

vs.

WALGREEN CO.,

        JURY TRIAL DEMANDED

Defendant.

_____/

**CLASS ACTION COMPLAINT**

Plaintiff Howard Moss ("Plaintiff"), brings this action on behalf of himself and all others similarly situated, against Defendant Walgreen Co. ("Walgreens" or "Defendant"), and alleges:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Walgreens. Further, greater than two-thirds of the Class members reside in states other than the state in which Walgreens is a citizen.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

(a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of their products in this District;

(b) conducts substantial business in this District; and

(c) is subject to personal jurisdiction in this District.

**NATURE OF THE ACTION**

3. For many years, Defendant has developed and marketed health care products for the consumer. Among other things, Defendant advertises and markets "oral health care products," including but not limited to the Walgreens® Brand Mouthwash. Walgreens Mouthwash is sold in a variety of combinations, including Walgreens Full Action Mouth Wash Eucalyptus Mint ("FULL ACTION"). Defendant has promoted FULL ACTION to customers as having special health benefits.

4. Specifically, through an extensive and comprehensive nationwide marketing campaign on its various websites, print and television media, among other places, Defendant has promoted the use of FULL ACTION to consumers as having special health benefits, including but not limited to, "Full action, Freshens Breath, Restores Enamel, Helps Strengthen Teeth, Helps kill germs that cause bad breadth, and Helps fight visible plaque above the gum line."

5. On September 27, 2010, Defendant's misleading and deceptive conduct – with its claims that FULL ACTION helps fights plaque above the gum line, plaque is a precursor to gum disease – was brought to light. In fact, any of the claims over and above FULL ACTION helping to prevent cavities, is patently misleading and deceptive.

6. Defendant's misleading marketing campaign begins with the name itself. FULL ACTION suggests it is comprehensive in purported function, and will purportedly provide benefits, including fighting gum disease and promoting healthy gums, also known as antigingivitis and antiplaque benefits. The product's labeling claims that FULL ACTION will provide all of the benefits listed, is misleading and deceptive.

7. Defendant's exhaustive advertising campaign builds on this deception. The packaging itself appears as follows:

Case 1:10-cv-61958-KMW Document 62-3 Entered on FLSD Docket 10/29/2012 Page 4 of 16



8. The product packaging states that it fights unsightly plaque above the gum line.

9. Importantly, the only active ingredient in FULL ACTION is sodium fluoride. While fluoride is proven to help fight cavities, it is not – ***and never has been*** – proven to help fight plaque above the gum line.

10. In sum, the message from Defendant is loud and clear – use FULL ACTION and it will fight plaque and gingivitis, thereby avoiding gum disease. Each person who has purchased FULL ACTION has been exposed to Defendant's misleading advertising message multiple times.

11. In fact, Defendant does not posses or rely upon a reasonable (much less scientific) basis that substantiates the claims that FULL ACTION removes plaque above the gum line or promotes healthy gums. Because Defendant makes claims which exceed the prevention of cavities, the representations are misleading, false, and reasonably likely to deceive the public.

12. Defendant's nationwide advertising campaign has been extensive and comprehensive, spending millions of dollars to convey these deceptive messages to consumers throughout the United

- 3 -

States, including Florida. Defendant conveys and continues to convey its deceptive claims about FULL ACTION through a variety of media, including television, newspapers, magazines, direct mail, the Internet, point-of-sale displays, and on the product's labels and labeling.

13. Through this extensive and comprehensive campaign, Defendant has conveyed one message: FULL ACTION is FULL ACTION, including the prevention of plaque above the gum line.

14. And as a result of the misleading messages conveyed through its campaign, Defendant has been able to charge a significant price premium for FULL ACTION.

15. In fact, liter for liter, a bottle of FULL ACTION sells for twenty five cents more at a local Walgreens in Florida, than the same size Walgreens "Original."

16. Plaintiff brings this action on behalf of himself and other similarly situated consumers, who purchased FULL ACTION in the State of Florida in order to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception Defendant has created in the minds of consumers, and to obtain redress for those who have purchased FULL ACTION. Plaintiff alleges violations of Florida's Deceptive and Unfair Trade Practices Act and breach of express warranty created by Defendant's advertising, including its labeling.

## PARTIES

17. At all times relevant to this matter, Plaintiff Howard Moss resided and continues to reside in Broward County, Florida. During the class period, Plaintiff was exposed to FULL ACTION advertising claims, purchased FULL ACTION, and suffered injury in fact and lost money as a result of the unfair trade practices described herein.

18. Defendant Walgreen Co. is incorporated in the State of Illinois, with its headquarters in Deerfield, Illinois. Walgreens promotes, markets, distributes and sells a broad range of well-known brand name, over-the-counter products, including FULL ACTION throughout the United States, including to tens of thousands of consumers in the State of Florida, including Broward County, Florida.

**SUBSTANTIVE ALLEGATIONS**

19. Through an extensive and comprehensive nationwide marketing campaign, Defendant makes various health claims on its websites and packaging that when taken as a whole, represents that FULL ACTION prevents gum disease – a claim that is not supported and misleading.

20. On September 27, 2010, the Food and Drug Administration ("FDA") determined that, if true, Defendant's marketing claim that FULL ACTION "Fights Unsightly Plaque Above the Gum Line" would subject FULL ACTION to be treated as a drug. However, the claims are false, misleading, and without merit.

21. Put simply, despite its labeling, FULL ACTION is not effective for antiplaque treatment.

22. Yet, Defendant claims in their advertising and labeling that FULL ACTION is "FULL ACTION" and will provide the benefits of fighting plaque and preventing gum disease.

23. That is, Defendant's message is use FULL ACTION, to the exclusion of other products, and it will prevent gum disease. Each person who has purchased FULL ACTION has been exposed to Defendant's misleading advertising message.

24. Defendant is clearly seeking to deceive the public with its misleading and deceptive claims. As further proof of the deception, the FDA also determined on September 27, 2010, that to the extent FULL ACTION is to be used in preventing or mitigating disease, or to affect the structure

or function of the body, by preventing removing plaque and preventing gum disease, it would be a misbranded product.

25.  If that was not enough, the FDA also opined that FULL ACTION is misleading because the principal display panel (PDP) describes FULL ACTION as "Sodium Fluoride and Acidulated Phosphate Topical Solution", which is inconsistent with the actual ingredients of the product.

**Defendant's Unfair and Deceptive Claims for FULL ACTION**

26.  As alleged herein, through an extensive and comprehensive nationwide marketing campaign on its various websites, including, but not limited to  http://www.walgreens.com/store/c/walgreens-mouth-rinse/ID=prod5934056- (last visited Oct. 28, 2010), and in print and television media, among other places, Defendant has promoted the use of FULL ACTION to consumers as having special health benefits, including but not limited to, "Full action, Freshens Breath, Restores Enamel, Helps Strengthen Teeth, Helps kill germs that cause bad breadth, and Helps fight visible plaque above the gum line."



27.   Defendant's misleading marketing campaign begins with language on its website and other advertising.  The name itself suggests that FULL ACTION is comprehensive in function, and will provide benefits, including fighting plaque and promoting healthy gums.

28.   The front panel of FULL ACTION states the product name: "Walgreens FULL ACTION Anticavity Mouthwash", as noted in the following picture:



29.   The violative claims described in the above paragraphs, combined with the appearance of the "FULL ACTION" name, suggests to a reasonable consumer that the product is comprehensive in function, and will provide the stated benefits, including antigingivitis and antiplaque benefits.  However, these assertions are made without any support.

30.   Defendant's disease prevention and disease mitigation claims at issue in this case are false, deceptive, and misleading because Defendant has no reasonable basis that substantiated these representations at the time the representations were made.  Therefore, these representations are false, misleading and reasonably likely to deceive the public.

31. And as a result of the misleading messages conveyed through its marketing and advertising campaign, Defendant has been able to charge a significant price premium for FULL ACTION. In fact, a One Liter bottle of FULL ACTION sells for $2.99 at a local Walgreens, while a two liter bottle of Walgreens Original sells for $4.99 – or a $1.00 difference, liter-for-liter.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> *All persons who purchased any flavor of Walgreens FULL ACTION Mouthrinse in the State of Florida.*

33. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

34. *Numerosity*. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

35. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendant has adequate substantiation for its claims prior to making them;

(b) whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c) whether Defendant's alleged conduct violates public policy;

(d) whether the alleged conduct constitutes violations of the laws asserted herein;

(e) whether Defendant engaged in false or deceptive advertising;

(f) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(g) whether Plaintiff and Class members are entitled to declaratory and injunctive relief whether Defendant had adequate substantiation for its claims prior to making them;

36. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class in that the Defendant deceived Plaintiff in the same way as they deceived each member of the Class when they purchased FULL ACTION.

37. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

38.     *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

39.     In the alternative, the Class may also be certified because:

(a)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)   Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

40. The claims asserted herein are applicable to all customers throughout the State of Florida who purchased FULL ACTION.

41. Adequate notice can be given to Class members directly using information maintained in Defendant's or Defendant's direct purchasers' records, or through notice by publication.

42. Damages may be calculated, in part, from the sales information maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

43. Unless a class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class members. Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class will continue to be misled.

### COUNT I

**For Violations of the Florida Deceptive and Unfair Trade Practices Act,
Florida Statutes §501.201, *et seq.*
On Behalf of Plaintiff and the Class**

44. Plaintiff realleges and incorporates by reference the allegations contained in the above referenced paragraphs as if fully set forth herein.

45. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (the "Act"). The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

46. Plaintiff is a consumer as defined by Fla. Stat. §501.203. FULL ACTION is a good within the meaning of the Act. Defendants are engaged in trade or commerce within the meaning of the Act.

47. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

48. Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." Defendant's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343. Further, FTC rules and regulations require that defendants have the same level of substantiation for its advertisements at the time they are made as it claimed in the advertisement. Defendant claims clinical proof.

49. Defendant has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

50. Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for FULL ACTION.

51. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

52. Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

53. Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

54. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-43 as if fully set forth herein.

55. Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased FULL ACTION. The terms of that contract include the promises and affirmations of fact made by Defendant on their product labels and through their marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

56. All conditions precedent to defendant's liability under this contract, including notice, has been performed by Plaintiff and the Class.

57. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product which could provide the benefits described above.

58. As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of FULL ACTION they purchased.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

E. Ordering Defendant to engage in a corrective advertising campaign;

F. Awarding attorneys' fees and costs; and

G. Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 29, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 982407


*s/ Stuart A. Davidson*
Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com