UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case Number:  0:11-cv-61965-KMW

REGINA GREENE, individually and on behalf of all others similarly situated,

    Plaintiffs,

vs.

SKINNY GIRL COCKTAILS, LLC, SGC GLOBAL, LLC, and BEAM GLOBAL SPIRITS AND WINE, INC.,

    Defendants.

**DEFENDANTS SKINNY GIRL COCKTAILS, LLC AND
SGC GLOBAL, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendants SKINNY GIRL COCKTAILS, LLC ("Skinny Girl") and SGC GLOBAL, LLC ("SGC") (Defendants Skinny Girl and SGC shall sometimes be collectively referred to herein as the "SGC Defendants"), pursuant to S.D. Fla. L.R. 7.1, hereby submit their Reply in support of Defendants Skinny Girl's and SGC's Motion to Dismiss Plaintiff's Class Action Complaint and Incorporated Memorandum of Law [D.E. 49], and in support state:

### I.    INTRODUCTION

This case is truly off to a strange start.  The Complaint was filed on September 2, 2011. Counsel for the parties personally appeared before the Court on February 21, 2012 for a scheduling conference, and Plaintiff has already filed a Motion for Partial Summary Judgment. Yet, after all that, there is still one nagging problem: there is not a single allegation anywhere that Ms. Greene, the only plaintiff in this action, ever bought a product distributed by the SGC Defendants.  Not in her Complaint.  Not in any declaration.  Nowhere.  The allegation is completely missing in this action.

It is a glaring omission.  Without so much as an averment somewhere that she purchased the product at some point during the time the SGC Defendants were distributing it, Plaintiff has

no claim against them. Plaintiff's omission highlights her equally inexcusable failure to distinguish between the three (3) separate and distinct Defendants in her effort to allege a claim against any Defendant on any of her four (4) expressed theories of liability. Literally, the problems created by Plaintiff's omission proliferate throughout the Complaint and her various claims for relief. To name but a few:

- **Standing**

In order to have Article III standing, Plaintiff must allege facts to show an injury in fact.[1] Where, as here, there is a clear dividing line in time between the SGC Defendants' distribution of the Skinnygirl Margarita product and Beam's distribution, in order to show standing, Plaintiff needs to at least aver that she bought a product distributed by the SGC Defendants. Otherwise, she has failed to allege any "casual link" to them, and thus cannot show that she has standing to bring any claims against them. It is not enough for Plaintiff to argue that other potential class members purchased products distributed by the SGC Defendants, because: (i) at this point, there is no "class," and Plaintiff must establish standing in her own right; and (ii) she could not represent a class of which she is not a member.[2] By failing to connect any of her alleged purchases to the SGC Defendants, Plaintiff's Complaint necessarily fails to allege the requisite factual matter that she was in fact injured by the purchase of a product distributed by the SGC Defendants and, therefore, has alleged standing sufficient to avoid dismissal of her Complaint.

- **Causation**

Likewise, if Plaintiff cannot aver that she bought a product distributed by the SGC Defendants, she cannot establish the essential element of causation implicit in each of her four (4) alleged claims. Certainly Plaintiff has cited no case on point that would allow her to sue defendant A for false advertising if she only bought defendant B's product. Again, Plaintiff

---

[1] "Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001). The Eleventh Circuit has elaborated three elements of standing: (i) injury in fact; (ii) the injury is fairly traceable to the defendant's conduct; and (iii) the injury will be redressed by a favorable ruling. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

[2] *See, e.g., Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.").

either needs to make the requisite factual assertions, or her Complaint should be dismissed.

- **Remedy**

There is no claim here for personal or other type of injury. Reduced to the Complaint's simplest terms, Plaintiff wants her money back, or at least the premium she allegedly paid when she purchased the margarita product at issue. She also wants injunctive relief. Here again, she cannot overcome her own shortcomings. Simply put, if she did not buy a product distributed by the SGC Defendants, she has no claim to recover money from them on any theory, nor does she have a claim for injunctive relief regarding a product the SGC Defendants no longer distribute.

- **Adequacy of Pleading**

By way of further example, Plaintiff's pleading deficiencies also infect her class theory. If she did not purchase a product distributed by the SGC Defendants, then she is not even a member of the class of those who did, and thus cannot claim to be an adequate representative of them.

The barriers to entry in terms of initiating a lawsuit like this are low. But not as low as Plaintiff would have them. For Plaintiff, it is sufficient to rope in all the parties who might be liable (depending, of course, on when Plaintiff made the alleged purchases), and sort the issues out on the merits, weeks or months — not to mention many dollars in fees — later. But, if that were all that was required — paying a filing fee and spelling the defendant's name correctly on the summons — then there would be no need for Rules 8 and 9; they would be completely superfluous. They are not superfluous. Indeed, if the Supreme Court's recent pronouncements in *Iqbal* mean anything, they mean that a plaintiff cannot use a slip shod pleading as a means of foisting the burden and expense of discovery onto an adversary. *See, Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009). Plaintiff must put forth a legally sufficient pleading before moving into discovery.

Even though Plaintiff is entitled to a deferential review of her allegations, the Court is under no obligation to invent facts that are not pled, to draw inferences out of thin air, or to force the SGC Defendants to spend time and money to learn in deposition only what Plaintiff could know and what should have been alleged in her Complaint. By the same token, SGC Defendants should not be put to the burden of taking Plaintiff's deposition only to learn that she never bought their product, and that they never should have been sued in the first place.

After nearly six (6) months, one thing should be clear: either Plaintiff bought product

distributed by the SGC Defendants or she did not. If she did, she should amend her Complaint to say so, and also cure, if she can, the other noted deficiencies in her Complaint while she is at it. At that point, Plaintiff's averments can properly be explored in discovery. But if she did not, then she should dismiss the Complaint as against the SGC Defendants. Those are the only options. Regrettably, Plaintiff has done neither. She has chosen to defend her indefensible Complaint -- not by showing how her Complaint alleges sufficient facts (for this she cannot do), but instead by offering up a series of irrelevant diversions and red herrings in an effort to attack the SGC Defendants' Motion to Dismiss. Those diversions are dealt with below. None of them can change the outcome, because try as she might, Plaintiff cannot make her Complaint say what it does not say. In the end, the SGC Defendants' Motion to Dismiss should be granted, and the Court should make clear the choice that has been there all along: either amend to allege facts that state a claim against the SGC Defendants, or else they will be dismissed. This must be accomplished if the case is to move beyond the mess that Plaintiff's Complaint has created.

## II.     ARGUMENT

If Plaintiff's Complaint were adequate, her opposition to the Motion to Dismiss would have consisted of a single paragraph, which stated in so many words: "The Motion should be denied, because paragraph ___ of the Complaint alleged Plaintiff bought the product before March 2011." Plaintiff cannot fill in that blank, nor can she counter the SGC Defendants' arguments that demonstrate why her Complaint fails, so instead she fills pages upon pages with obfuscation, rhetoric, and invective, but little substance. Her arguments fall into six basic diversions, which are addressed below.

### A.     The "Beam Answered, So Can You" Diversion

Plaintiff's lead diversion is to argue that her Complaint must be sufficient, because Co-Defendant Beam chose to file an answer instead of a motion to dismiss. Respectfully, there is a world of difference between Beam and the SGC Defendants as to the relief sought and the theories pled. Indeed, the Complaint reveals that a September 2011 announcement by Whole Foods was the catalyst for this Complaint (and the many other copycat complaints filed around the country). That announcement, however, came several months *after* Beam had acquired the brand from the SGC Defendants. Notably, in many of the actions around the country, only Beam has been sued. It is one thing for the current marketer and distributor of a product to elect to file an answer. It is an altogether different subject to expect a different party, like the SGC

Defendants, to file an answer to a Complaint that does not even allege that the Plaintiff ever bought their product.

Plaintiff has an odd variant of this argument. She asserts "Either each Defendant is responsible, as Plaintiff alleges, or each is not." [Opp. Mem. at 13.] There is no authority offered in support of this proposition. Nor is it logically defensible. If we indulge Plaintiff in all of her other factual averments (which SGC Defendants dispute), then there are four kinds of people in the world: (i) consumers who only bought the product <u>before</u> Beam acquired the brand; (ii) consumers who only bought the product <u>after</u> Beam bought the brand; (iii) consumers who bought the product both <u>before</u> and <u>after</u> Beam bought the brand; and (iv) people who never bought the product at all. Of these four groups, only a person in group (i) or (iii) could possibly have any claim against the SGC Defendants. However, the only thing we know about Ms. Greene is that, according to her Complaint, she does not belong in group (iv). But there are no facts alleged that would place her in group (i) or (iii) -- and that is the problem.

This was precisely the issue teed up for the Supreme Court in *Ashcoft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). As the Court framed the issue:

> Respondent's account of his prison ordeal could, if proved, demonstrate unconstitutional misconduct by ***some*** governmental actors. But the allegations and pleadings with respect to ***these*** actors are not before us here. This case instead turns upon a narrower question: Did respondent, as the plaintiff in the District Court, plead factual matter that, if taken as true, states a claim that ***petitioners*** deprived him of his clearly established constitutional rights. We hold respondent's pleadings are insufficient.

129 S.Ct. at 1942-43 (emphasis added).

Mr. Iqbal's problem was that his complaint failed to allege facts sufficient to show that the United States Attorney General and FBI Director "purposefully housed" high value detainees in maximum security conditions "due to their race, religion or national origin." *Id*. at 1952. Such facts were necessary to state a civil rights claim against those two defendants. Because of those shortcomings the Court held the complaint failed to satisfy Rule 8. *Id*. Plaintiff's Complaint here suffers similar defects, and should meet the same fate.

Plaintiff's opposition attaches copies of other complaints her attorney has filed and that have withstood pleading challenges. Leaving aside for a moment that those matters are outside the four corners of the Complaint, and are not properly before the Court in ruling upon a motion

to dismiss, those other complaints all have one important thing in common: **there was only one (1) defendant involved in those other actions**. Thus, in those circumstances, a simple averment along the line of "plaintiff bought defendant's product" is sufficient to avoid the problems Plaintiff's Complaint faces here. To the extent those other complaints inform any issue before the Court, they only support the SGC Defendants' position, not Plaintiff's.

**B.      The "They Can Find It All Out in Discovery" Diversion**

Plaintiff also argues that the SGC Defendants' Motion should be denied because they can learn whatever facts are missing from the Complaint through discovery. That same argument could be made in response to every Rule 12(b)(6) motion, and if it were sufficient on its own, it would nullify Rules 8 and 9. Indeed, the same argument was also made, and soundly rejected, in *Iqbal*. First, the Court observed that "Rule 8 makes a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, *but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions*." 129 S. Ct. at 1950 (emphasis added). Later in the opinion, the Court elaborated on its reasoning in this regard:

> We have held, however, that the question presented by a motion to dismiss a complaint does not turn on the controls placed on the discovery process. *Twombly*, supra, at 559, 127 S.Ct. 1955 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side" … ).

*Id*. at 1953.

To make things worse, in this case Plaintiff's shortcomings consist of facts that *only she could know* and thus could not be cured through discovery of the SGC Defendants. Plaintiff does not need discovery to aver whether she purchased the SGC Defendants' product. She could depose SGC Defendants' witnesses, but she still could not learn from them when *she* bought the product, and whether, as a result, *she* falls in either group (i) or (iii) discussed above. It may be a small point, *or it may be dispositive of her claims against the SGC Defendants.* That for nearly six (6) months she has clung obstinately to a factually deficient pleading rather than amend to cure the problem certainly raises questions whether she can truthfully make such an allegation. SGC Defendants submit that Plaintiff should have both the opportunity and the obligation to amend and make that allegation if possible. If not, then the SGC Defendants do not belong in

this case.

C.     **The "They Made A Lot of Money Off Someone" and "My Lawyers Have Avoided Dismissal Before" Diversions.**

Plaintiff's opposition asserts "Defendants have made millions of dollars by marketing and selling their Skinny Girl Margarita beverage . . . as an "all natural" product that contains no preservatives."  [Opp. Mem at 1.]  This observation encapsulates the problem with Plaintiff's Complaint.  Assume the observation is true.  Aside from the "so what" factor, it still: (i) lumps all three (3) "defendants" together improperly in a shotgun-style pleading; and (ii) does not allege any facts to show that the *SGC Defendants* made any money by virtue of Plaintiff's purchases.  Shifting the focus from her pleading deficiencies to statements allegedly made by "defendants" (again, generically referred to) will not cure the failure of the Complaint to state facts that Plaintiff bought the SGC Defendants' product.

In the same breath, Plaintiff argues that "the facts of this case are just not that complicated."  [Opp. Mem. at 2.]  She then appends nearly 100 pages of extraneous material from other cases, as though the sufficiency of her Complaint should be graded on a curve in the context of completely extraneous lawsuits involving a single defendant.  Rules 8 and 9 suggest no curve.

D.     **The "Our Complaint Gave You Notice, And You Know What You Did Wrong" Diversion.**

Plaintiff responds to SGC Defendants' notice argument principally by referring to statements attributed to Whole Foods, which precipitated this and numerous other lawsuits.  As noted above, those actions occurred months after Beam acquired the business.  As such, anything Whole Foods said or did in September 2011 is completely irrelevant as to the SGC Defendants.  For example, there is no allegation along the lines of "I had been buying the product since it was first introduced, but I stopped when I heard about what Whole Foods did."  At least that averment would put Plaintiff in groups (i) and (iii).  Otherwise, no amount of appeal to Whole Foods' actions can salvage her Complaint.

E.     **The "The Sale to Beam Is Outside The Pleadings" Diversion.**

Plaintiff also suggests that the SGC Defendants' Motion has somehow gone beyond the four corners of the Complaint in discussing its role, as compared with Beam's role, in marketing the product following Beam's purchase of the business.  Plaintiff is wrong.  The SGC

Defendants did not need to inject the sale of the Skinnygirl business into this case, because Plaintiff did that herself. Paragraph 34 of the Complaint avers, in part, "In early 2011, Beam Global Spirits and Wine, Inc. purchased the Skinny Girl Brand for 120 Million Dollars." [D.E. 1.] Having put that transaction at issue, it became incumbent upon Plaintiff to allege facts that she had begun purchasing before the transaction, so as to tie her allegations to the SGC Defendants, as opposed to, or in addition to, tying her allegations to Beam.

Plaintiff's Complaint fails this test. It offers, at best, conclusory statements about what obligations other individuals — notably Bethany Frankel — may have in promoting the product *after* the sale. Even those averments are conclusory, and thus properly disregarded. But even assuming the averments are true, they do not connect the SGC Defendants to any post-transaction conduct. Plaintiff's factual averments in this regard cannot even be judged by the *Twombly-Iqbal* plausibility standard. Plaintiff's facts are not merely implausible; they are non-existent.

Because the Complaint points out that the SGC Defendants sold the business to Beam lock, stock, and barrel, any argument by Plaintiff that the SGC Defendants somehow continued to be involved in promoting, marketing and distributing a product they no longer owned became implausible on its face. The facts Plaintiff actually did aver made the implausibility of her theory more apparent. For example, paragraph 27 of the Complaint avers "On or about September 1, 2011 Whole Foods, a retail seller of the Margaritas revealed that it would discontinue the sale of the Margaritas because the Margaritas were not all natural." [D.E.1.] Again, indulging the assumption that these facts and every inference from them are true, it still begs the question: "What does this have to do with the SGC Defendants?" Given that, as Plaintiff alleged, Beam bought the brand months earlier, any product Whole Foods may have "discontinued" was Beam's product, and not the SGC Defendants' product. In short, Plaintiff's Complaint sheds light on the conflict but does not resolve it, and Plaintiff's Opposition does not even attempt to do so.

F.   **The "Elephant In The Room" Diversion**

By this point, the Court no doubt is wondering why Plaintiff does not simply amend her Complaint, and thereby solve as many of these defects as her own conduct will permit, then move on. If she purchased the product distributed by the SGC Defendants, then she should make the allegation and cure, if she can, the other noted deficiencies in the Complaint. The case can

then, perhaps, move forward.  If she cannot do so, then the SGC Defendants should be dismissed, and the case can move on without them, just like several other cases around the country filed against Beam alone.

The only explanation the SGC Defendants can come up with is that Plaintiff fears she would have to re-file her misbegotten partial summary judgment motion if she were to amend her Complaint.  From a technical procedural standpoint, that is probably true.  *See, e.g., NCI Group, Inc. v. Cannon Services, Inc.,* Case No. 1:09 CV-0441, 2011 WL 5599127, at *5 (N.D. Ga. November 16, 2011) (denying plaintiff's untimely motion for leave to amend because it would render defendant's pending summary judgment motion moot); *Colony Ins. Co. v. Montecito Renaissance, Inc.*, Case No. 8:09-CV-1469, 2011 WL 1933597 (M.D. Fla. May 19, 2011) (filing of amended complaint in underlying action renders plaintiff insurance company's motion for summary judgment in coverage action moot); *Adams v.* Cherry, Case No. 4-08CV572, 2010 WL 6089073 (N.D. Fla. September 23, 2010) (granting plaintiff leave to amend complaint makes pending summary judgment motion moot).  From a practical standpoint, it is completely irrelevant.  As the SGC Defendants pointed out at length in their opposition to Plaintiff's summary judgment motion, it would be completely improper, and reversible error, to grant that motion at this stage of the proceedings anyway.  Whether the motion is denied as moot in light of Plaintiff filing an amended complaint, or taken off calendar as a result of granting the SGC Defendants' Motion to Dismiss, or denied on the merits, the end result is going to be the same.  Plaintiff's premature motion for partial summary judgment cannot be granted against the SGC Defendants without a showing that she bought their product.  In the end, the only thing Plaintiff will have accomplished by clinging to both her deficient Complaint and her ill-advised partial summary judgment motion will be to leave this case stuck at the starting gate for much longer than it ought to have been.

### III.   CONCLUSION

The SGC Defendants are mindful of the Court's stated desire to get this case moving forward at a brisker pace.  But brisk progress in the wrong direction only gets one farther off course faster.  The solution is not to allow Plaintiff to unleash discovery and hope that will allow her to plug the holes in her Complaint; as noted above, Plaintiff does not need discovery to fix her basic problem of whether she bought the SGC Defendants' product or not.  If these core problems with the Complaint can be cured by amendment, they should be cured now.  If they

cannot, then the SGC Defendants should be dismissed. But there is no justification for dragging them along through expensive and time consuming discovery only to learn that Plaintiff never bought their product. It is no answer to say that the SGC Defendants can ask those questions at Plaintiff's deposition. Those questions need to be asked, and answered, either through an amended complaint or through a dismissal of the SGC Defendants.

The SGC Defendants stand on their points of authorities cited for the dismissal of Plaintiff's Complaint and note that merely pleading -- if she can -- that she bought the SGC Defendants' product will not cure her impermissible failure to comply with Rules 8 and 9 caused by her conflation of three (3) distinct and separately named defendants into one amorphous defendant, or her otherwise conclusory and deficient allegations of violation of Fla. Stat. § 817.41, or entitlement to relief under a theory of unjust enrichment.

Based on the foregoing, as well as the additional arguments made in the SGC Defendants' Motion to Dismiss, the SGC Defendants respectfully request that their Motion to Dismiss be granted.

Respectfully submitted,

| Co-Counsel: | Counsel for Defendants SKINNY GIRL COCKTAILS, LLC and SGC GLOBAL, LLC |
|---|---|
| Rick L. Shackelford, Esquire | |
| *Email: shackelfordr@gtlaw.com* | |
| Robert J. Herrington, Esquire | */s/ Jeffrey Allan Hirsch* |
| California Bar No. 234417 | Jeffrey Allan Hirsch, Esquire |
| *Email: herringtonr@gtlaw.com* | Florida Bar No. 199850 |
| GREENBERG TRAURIG, LLP | *Email: hirsch@gtlaw.com* |
| 2450 Colorado Avenue | Kristina L. Arnsdorff, Esquire |
| Suite 400E | Florida Bar No. 0040596 |
| Santa Monica, CA 90404 | *Email: arnsdorffk@gtlaw.com* |
| Telephone: (310) 586-7700 | GREENBERG TRAURIG, P.A. |
| (admitted *pro hac vice*) | 401 East Olas Boulevard, Suite 2000 |
| | Fort Lauderdale, Florida 33301 |
| | Telephone: 954-765-0500 |
| | Facsimile: 954-765-1477 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of March, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jeffrey Allan Hirsch*
JEFFREY ALLAN HIRSCH

**SERVICE LIST**

| *Counsel for Plaintiffs and the Class* | *Counsel for Beam Global Spirits and Wine, Inc.* |
|---|---|
| Stuart A. Davidson | Benjamine Reid |
| Florida Bar No.:  084824 | Florida Bar No. 183522 |
| *Email:  sdavidson@rgrdlaw.com* | *E-mail: breid@carltonfields.com* |
| Cullin A. O'Brien | Amy Lane Hurwitz |
| Florida Bar No. 597341 | *Email: ahurwitz@carltonfields.com* |
| *Email: cobrien@rgrdlaw.com* | CARLTON FIELDS, P.A. |
| Mark J. Dearman | 100 S.E. Second Street, #4200 |
| Florida Bar No. 982407 | Miami, Florida 33131-9101 |
| *Email:  mdearman@rgrdlaw.com* | Telephone: (305) 530-0050 |
| ROBBINS GELLER RUDMAN & DOWD LLP | Facsimile: (305) 530-0055 |
| 120 East Palmetto Park Road Suite 500 | Donald I. Strauber |
| Boca Raton, Florida  33432 | *Email: dstrauber@chadbourne.com* |
| Telephone:  561-750-3000 | Mary T. Yelenick |
| Facsimile: 561-750-3364 | *Email: myelenick@chadbourne.com* |
| | Garrett S. Kamen |
| | *Email: gkamen@chadbourne.com* |
| WALDEN LAW FIRM, PLLC | CHADBOURNE & PARKE |
| Ark. Bar No.  2006069 | 30 Rockefeller Plaza |
| Email:  *rwalden@waldenlawfirm.com* | New York, NY 10112 |
| 10121 N. Rodney Parham #5 | Telephone:  212-408-5100 |
| Little Rock, AR  72227 | |
| Telephone:  501-907-7000 | |
| Facsimile:  888-220-7933 | |

Nabil Majed Nachawati , II
*Email: mn@fnlawfirm.com*
FEARS NACHWATI LAW FIRM
4925 Greenville Avenue, Suite 715
Dallas, Texas 75206
Telephone: 214-890-0711

R. Dean Gresham
*Email: dgresham@greshampc.com*
GRESHAM PC
2311 Cedar Springs Road,  Suite 200
Dallas, Texas 75201
Telephone: 214-420-9995